IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

**STATE OF TENNESSEE v. CALVIN OWENS**

**Appeal from the Criminal Court for Shelby County**
**Nos. 01-06973, 74, 75, 76     Joseph B. Dailey, Judge**

---

**No. W2003-00033-CCA-R3-CD  - Filed December 17, 2003**

---

The Defendant, Calvin Owens, was convicted of two counts of aggravated robbery, one count of attempt to commit especially aggravated robbery, and one count of attempted second degree murder, all Class B felonies.  After a sentencing hearing, the trial court sentenced him as a Range I offender to eleven years for each of his four convictions.  The trial court ordered three of the sentences to be served consecutively, with the sentence for the remaining conviction to be served concurrently, resulting in an effective sentence of thirty-three years.  In this direct appeal, the Defendant argues that the evidence is insufficient to support his convictions and that the trial court erred in sentencing him to thirty-three years.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Harry Sayle, Memphis, Tennessee, for the appellant, Calvin Owens.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 9, 2000, Reuben Ramirez went to a store with his friends, Jose Salazar and Manuel Ramirez, to cash their paychecks.  They each left the store with several hundred dollars in cash.  As they were driving in Mr. Salazar's car to the apartment complex in which they all lived, the hood of the car flew up, breaking the windshield.  The men stopped the car, lowered the hood, and examined the damage to the car.  They then proceeded to their apartment complex.  When they arrived, the Defendant approached them, asking whether he could help.  The Defendant told the men that he knew someone from whom the men could buy parts to repair the damaged car.  The Defendant told

them that he would get them a phone number they could call to buy parts for the car. As he was talking to the three men, the Defendant placed his hand on the hood of the car. The Defendant accompanied Jose Salazar and Manuel Ramirez into Mr. Salazar's apartment, and Reuben Ramirez went to get his car so they could drive it to the auto parts store. Mr. Salazar went into the bedroom of his apartment to look for a pen and paper. When he emerged from his bedroom into the living room of his apartment, he saw the Defendant pointing a gun at Manuel Ramirez's head. The Defendant told the two men to get on the floor, which they did. The Defendant took Mr. Salazar's wallet, which contained over seven hundred dollars. Manuel Ramirez told Mr. Salazar that the Defendant had taken his wallet as well.

As the Defendant attempted to leave the apartment, Reuben Ramirez arrived at the door. The Defendant put a gun to Reuben Ramirez's head, grabbed his hair, and threw him to the floor. The Defendant took Reuben Ramirez's wallet, then forced him into the bedroom where Mr. Salazar and Manuel Ramirez were. The Defendant demanded more money from Reuben Ramirez, so Reuben Ramirez reached into his pants pocket to get the money he had just received when he cashed his check. As Reuben Ramirez put his hand in his pocket, the Defendant shot him in the chest. The bullet passed through Reuben Ramirez's torso and exited his back. After the Defendant shot him, Reuben Ramirez fled out the window, ran to another apartment, and asked for help. A few minutes later, the police arrived. Reuben Ramirez testified that, as a result of the gunshot wound to his chest, he could no longer work outside in the heat. During their testimony, both Reuben Ramirez and Jose Salazar identified the Defendant as the perpetrator.

Officer Ricky Davison, a crime scene investigator with the Memphis Police Department, examined the scene of the shooting. He located blood and a spent bullet on the bedroom floor of Mr. Salazar's apartment. Officer Davison also dusted Mr. Salazar's entire car for fingerprints, and he was able to obtain several from the hood of the car. Larry Preston, a fingerprint examiner with the Memphis Police Department, determined that one of the fingerprints lifted from the hood of Mr. Salazar's vehicle belonged to the Defendant.

Based on this evidence, the jury found the Defendant guilty of aggravated robbery with respect to Jose Salazar, aggravated robbery with respect to Manuel Ramirez, and, with respect to the attack on Reuben Ramirez, attempted especially aggravated robbery and attempted second degree murder. The Defendant argues that the evidence is insufficient to support his convictions.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102,

105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

In this case, the Defendant was convicted of two counts of aggravated robbery, attempted especially aggravated robbery, and attempted second degree murder. Aggravated robbery is robbery accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Our criminal code defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a). Jose Salazar testified that, as he was walking out of his bedroom, he saw the Defendant pointing a gun at his friend Manuel Ramirez's head. He stated that the Defendant motioned with the gun for them to get on the floor. The Defendant took Mr. Salazar's wallet, which contained over seven hundred dollars. The evidence is sufficient to support the Defendant's conviction of the aggravated robbery of Mr. Salazar.

The Defendant was also convicted of the aggravated robbery of Manuel Ramirez, and he specifically argues that the evidence is insufficient to support that conviction because Mr. Ramirez did not testify at trial. However, as we have noted, Mr. Salazar observed the Defendant pointing a gun at Manuel Ramirez's head. Furthermore, Mr. Salazar testified that Mr. Ramirez told him that the Defendant had already taken his wallet. Pursuant to the excited utterance exception to the hearsay rule, the trial court allowed Mr. Salazar to testify that, while they were lying on the bedroom floor, Manuel Ramirez said to him, "He already took away my wallet . . . Everything we worked all week for it has been taken away from us already. All week long and in such a short time it's been taken away from us."[1] This evidence is sufficient to support the Defendant's conviction of the aggravated robbery of Manuel Ramirez.

Next, in order to sustain the Defendant's conviction of the attempted especially aggravated robbery of Reuben Ramirez, the State must have proven that the Defendant acted with the intent to commit an especially aggravated robbery and that he believed that his conduct would cause the especially aggravated robbery. See Tenn. Code Ann. § 39-12-101(a)(2). Especially aggravated robbery is robbery accomplished through the use of a deadly weapon and where the victim suffers serious bodily injury. See id. § 39-13-403(a). Reuben Ramirez testified that, when he arrived at his

---

[1]The Defendant does not appeal the trial court's admission of the hearsay.

friend's apartment, the Defendant put a gun to his head, grabbed him by the hair, and threw him onto the floor. The Defendant demanded money from Mr. Ramirez even after Mr. Ramirez gave him his wallet. When Mr. Ramirez reached into his pocket to give the Defendant more money, the Defendant shot him in the chest. This evidence is sufficient to sustain the Defendant's conviction of attempted especially aggravated robbery.

Finally, the Defendant was convicted of attempted second degree murder. Attempted second degree murder occurs where a defendant acts with the intent to cause the knowing death of another, believing his or her conduct will cause the result without further conduct on his or her part. See Tenn. Code Ann. §§ 39-12-101(a)(2), 39-13-210(a)(1). In this case, the Defendant was robbing Reuben Ramirez and his friends at gunpoint. When Mr. Ramirez reached into his pocket to give the Defendant the money he demanded, the Defendant shot him in the chest, causing a severe wound. The jury could easily have found that in so doing, the Defendant intended to kill the victim, who was unarmed. In short, we find the evidence sufficient to support the Defendant's conviction of attempted second degree murder. This issue is without merit.

The Defendant also complains that he was improperly sentenced. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this case, the presentence report reflects that, at the time of sentencing, the Defendant was twenty-eight years old and single. He graduated from high school in 1993 and had some post high-school education. The presentence report states that the Defendant was employed in various restaurants from October of 1991 until January of 1994. The Defendant also stated that, for

approximately one year in 1999 and 2000, he worked for two temporary employment agencies, and that he worked for his father in 1998 and 1999. In addition to the instant offenses, the Defendant was convicted of being an accessory after the fact to both especially aggravated kidnapping and aggravated robbery in 1996, forgery under one thousand dollars in 1996, and aggravated robbery in 1994.

At the sentencing hearing, the Defendant denied any involvement in the crimes for which he was convicted. After determining that the Defendant had only one prior felony conviction within the conviction class or the next two lower classes, the trial court properly determined that the Defendant was a Range I offender. A Range I offender convicted of a Class B felony, which each of the Defendant's convictions are, is subject to a potential sentence of eight to twelve years in confinement. See Tenn. Code Ann. § 40-35-112(a)(2). The presumptive sentence for a Class B felony is the minimum in the range, increased by applicable enhancement factors and decreased by applicable mitigating factors. See id. § 40-35-210(c), (e).

In determining the appropriate sentences for the Defendant, the trial court found two enhancement factors: (1) the Defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range; and (2) the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victims was particularly great. See Tenn. Code Ann. § 40-35-114(2), (7). The trial court found no mitigating factors. At the conclusion of the sentencing hearing, the trial court sentenced the Defendant to eleven years on each of his four convictions. The trial court ordered the sentences for the two aggravated robbery convictions and the attempted especially aggravated robbery conviction to be served consecutively, with the sentence for the attempted second degree murder conviction to be served concurrently with the sentence for attempted especially aggravated robbery. The Defendant's effective sentence was thus thirty-three years.

The Defendant's challenge to his sentence is twofold. First, the Defendant contends that the trial court erred by enhancing his sentence for attempted especially aggravated robbery based on the particularly great injury inflicted upon the victim or the particularly great amount of property taken from the victim. See Tenn. Code Ann. § 40-35-114(7). He asserts that, because serious bodily injury is an element of the offense of attempted especially aggravated robbery, it was error for the trial court to enhance that sentence based on the victim's injuries. However, it is clear from the transcript of the sentencing hearing that the judge did not enhance the Defendant's sentence based on the victim's particularly great injuries; rather, he focused on the financial loss sustained by the victim when he enhanced the sentence.

We must agree with the Defendant that it was error for the trial court to enhance the Defendant's sentence for attempted especially aggravated robbery based upon the particularly great financial loss suffered by Reuben Ramirez. Mr. Ramirez testified that the Defendant took his wallet, which contained eighty or one hundred dollars. Although Mr. Ramirez stated that he had another four hundred and fifty dollars in his pocket, the Defendant shot him when he reached into his pocket to recover it. Therefore, it appears that the Defendant did not take the four hundred and fifty dollars

-5-

from Mr. Ramirez. We cannot say that the loss of eighty or one hundred dollars amounts to "particularly great" financial loss for enhancement purposes. Therefore, the trial court erred by applying enhancement factor seven to the Defendant's sentence for attempted especially aggravated robbery.

Nevertheless, the trial court's error in this regard was harmless because the trial court found as an additional enhancement factor that the Defendant had a previous history of criminal convictions in addition to those necessary to establish him as a Range I offender. See Tenn. Code Ann. § 40-35-114(2). As we have already noted, the Defendant had prior felony convictions for forgery under one thousand dollars, aggravated robbery, and for being an accessory after the fact in an especially aggravated kidnapping and an aggravated robbery. This enhancement factor is sufficient to justify the trial court's decision to enhance the Defendant's sentence for attempted especially aggravated robbery to eleven years.

The Defendant also argues that the trial court erred by ordering him to serve his sentences for aggravated robbery and attempted especially aggravated robbery consecutively. In ordering consecutive sentencing, the trial court relied upon the following criteria: (1) the Defendant was a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood; (2) the Defendant was an offender whose record of criminal activity was extensive; and (3) the Defendant was a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. § 40-35-115(b)(1), (2), (4). Any one of these factors, if properly applied, would justify the imposition of consecutive sentencing. See id., Sentencing Commission Comments.

First, the trial court found the Defendant to be a professional criminal. See id. § 40-35-115(b)(1). The trial court relied on the Defendant's scant employment history and the types of crimes for which he had been convicted. The trial judge correctly noted that the twenty-eight year old Defendant did not have an outstanding work history. Between October of 1991 and January of 1994, the Defendant was apparently a dishwasher in three restaurants. From some time in 1998 until June of 2000, he worked sporadically for two temporary employment agencies and his father. Furthermore, the Defendant's history of criminal activity contains several crimes that are motivated by a desire for financial gain, such as aggravated robbery, forgery, theft, and shoplifting.[2] We believe that the trial court was justified in ordering consecutive sentencing based on this evidence. At the time of sentencing, the Defendant was twenty-eight years old, had an unstable employment history, and had accumulated ten criminal convictions, several of which were financially motivated. Therefore, the trial court did not abuse its discretion by imposing consecutive sentencing based on the professional criminal criterion.

The trial court also cited the Defendant's extensive criminal history as a reason for imposing consecutive sentences. See id. § 40-35-155(b)(2). Consecutive sentences imposed upon the basis of an extensive record of criminal activity frequently look to a defendant's prior record in addition

---

[2]The record reflects that the crimes of theft and shoplifting occurred while the Defendant was a juvenile.

-6-

to the offenses at issue. See State v. Palmer, 10 S.W.3d 638, 648 (Tenn. Crim. App. 1999). In this case, the Defendant was convicted of two aggravated robberies, one attempted especially aggravated robbery, and one attempted second degree murder, and all the convictions arose from the same criminal episode. However, the Defendant's adult criminal history dates back to 1994, when the Defendant was nineteen years old. In addition to the instant convictions, the Defendant has been convicted of aggravated robbery, forgery, and accessory after the fact to especially aggravated kidnapping and aggravated robbery. We agree with the trial court that the Defendant's history of criminal activity is extensive. The trial court did not err in this regard.

Finally, the trial court imposed consecutive sentences based on the Defendant being a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. § 40-35-115(b)(4). Obviously, the crimes committed against these three victims were dangerous crimes. As noted by our supreme court, however, every offender convicted of two or more dangerous crimes is not thereby a dangerous offender who is subject to consecutive sentences. See State v. Wilkerson, 905 S.W. 2d 933, 938 (Tenn. 1995).

Based upon our review of the record in this case, we have no hesitation in finding "that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." Wilkerson, 905 S.W. 2d at 938. The trial judge neither erred nor abused his discretion when he ordered an effective sentence of thirty-three years. This issue is without merit.

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE